JOHN H. SCHELL, Respondent, v. J. H. STEPHENS et al., Appellants.

1. *Auctioneer — Implied warranty — Bill of sale — Presumption derived from signature.*— The mere fact that auctioneers at the time of sale were acting as such is not of itself notice that they were not selling their own goods, and they must be deemed vendors, and responsible as such for the title of the goods sold, unless they disclose at the time of the sale the name of the principal. And the joint signature of the bill of sale by the auctioneer with the principal, will raise a presumption that the auctioneer acted also as principal, which cannot be contradicted by parol evidence that he did not sell or intend to hold himself responsible as principal.

2. *Warranty, verbal — Statute of frauds.*— The verbal warranty of an auctioneer, where he himself alone was trusted and expressly agreed for himself to warrant the title, is an original undertaking and not within the statute of frauds, and it may therefore be shown in evidence.

*Appeal from Kansas City Court of Common Pleas.*

*A. A. Tomlinson* and *J. Hogle*, for appellants.

I. The court erred in holding that the instrument offered in evidence was a contract of sale. It was merely a receipt, and was susceptible of explanation by parol testimony. (1 Greenl. Ev., § 305; 1 Phil. Ev. 474-7; Weatherford v. Farrar, 18 Mo. 474.)

II. If plaintiff knew that defendants were acting in the character of auctioneers or agents in the sale of the property, then defendants can only be held liable for the debt, default or miscarriage of another by some memorandum in writing charging them with such liability, and signed by themselves or their lawfully authorized agents. (Wagn. Stat. 656, § 5.)

*H. B. Johnson*, for respondent.

I. When an agent enters into a contract in his own name, and does not disclose the name of his principal, he is personally liable. (McClellan v. Parker, 27 Mo. 162; Byars v. Doore's Adm'r, 20 Mo. 284; Lapsley v. McKinstry, 38 Mo. 245; Winsor v. Griggs, 5 Cush. 210; Stackpole v. Arnold, 11 Mass. 27; Mauri v. Heffernan, 13 Johns. 57; Sewall v. Fitch, 8 Cow. 215; Sto. Agency, §§ 266-7, 269, 276, 279, 288; Paley Agency, 372-3.)

II. An auctioneer is deemed personally a vendor to the purchaser at the sale, unless at the time of the sale he discloses the name of his principal, and the transaction is treated as being exclusively between the principal and the vendee. (Sto. Agency, §§ 27, 267; Mills v. Hunt, 20 Wend. 431; Jones v. Littledale, 6 Ad. & Ell. 486; Franklyn v. Lamond, 4 Com. B. 637; Hanson v. Roberdeau, Peake's N. P. 120.)

III. The mere fact that defendants were acting as auctioneers was not sufficient notice to plaintiff that they were not selling their own goods. (Mills v. Hunt, 20 Wend. 431; Jones v. Littledale, 1 Nev. & Perry, 677; Thompson v. McCullough, 31 Mo. 224.)

IV. Even where an agent discloses the name of his principal, if he signs a written contract in his own name, which does not upon its face show that it was done as the agent of another, he will be personally bound thereby. (Mills v. Hunt, 20 Wend. 431; Alford v. Eglisfield, Dyer, 230 *a;* Talbot v. Godbolt, Yelv. 137; 2 Liverm. Agency, ed. 1818, pp. 249, 251; Paley Agency, 278, 379; Smyth v. Spaulding, 13 Mo. 529; Mayhew v. Prince, 11 Mass. 54.)

V. When a person contracting as an agent and known to be an agent voluntarily incurs a personal responsibility, as, for instance, by guaranteeing the title to property sold by him as an auctioneer, he becomes personally liable. (Sto. Agency, §§ 269, 270; Simonds v. Heard, 23 Pick. 120; Tippets v. Walker, 4 Mass. 595; Appleton v. Binks, 5 East, 148; Stone v. Wood, 7 Cow. 453; Duvall v. Craig, 2 Wheat. 56; Mills v. Hunt, 20 Wend. 431; Kirkpatrick v. Stainer, 22 Wend. 244; Taintor v. Prendergast, 3 Hill, 72; Waring v. Mason, 18 Wend. 425; Collins v. Butts, 10 Wend. 399.)

VI. When an agent does not disclose his principal, or assumes a voluntary responsibility, he is personally liable as upon his own contract. The contract need not be in writing. It is not within the statute of frauds. (Sto. Agency, § 279; Browne on Frauds, §§ 155–213; Couturier v. Hastie, 16 Eng. L. & E. Rep. 562; Sherwood v. Stone, 14 N. Y. 267; Emerson v. Slater, 22 How. 28; DeWolf v. Rabaud *et al.*, 1 Pet. 476.)

VII. In case of unwritten contracts, the question is, to whom was the credit given? If given to the agent he is personally liable, though known to be acting as an agent. (Scrace v. Whittington, 2 Barn. & Cress. 11; Iveson v. Conington, 1 Barn. & Cress. 160; Cunningham v. Sales, 7 Wend. 106; Sto. Agency, § 279.) An agent, although known as such, by an express warranty of soundness or of title may make himself personally liable if credit is clearly given him on such warranty. (Paley Agency, 385–6; Sto. Agency, § 279; Fenn v. Harrison, 4 T. R. 177.)

*Lay & Belch*, for respondent.

I. Where a vendor, in possession of personal property, sells for full value, a warranty of title is implied. (Robinson v. Rice, 20 Mo. 229; Barton v. Faherty, 3 Green, Iowa, 327.)

II. It is well settled that unless an auctioneer discloses the name of his principal, he is bound as vendor himself. (McClellan *et al.* v. Parker, 27 Mo. 162; Thompson v. McCullough, 31 Mo. 224; Dent v. McGrath, 3 Bush, Ky., 174; Thomas v. Kerr, 3 Bush, 619; Mills v. Hunt, 20 Wend. 431; 1 Am. Lead. Cas. 135.)

III. Although the agent disclose the name of his principal, he may be personally liable. (Hovey v. Pitcher, 13 Mo. 191.) And even if he discloses the name of his principal he is personally liable, where he signs his own name to a written contract which does not upon its face show that he contracted as agent. (Mills v. Hunt, *supra*.)

IV. The receipt offered in evidence is an unconditional contract of sale. (Montany v. Rock, 10 Mo. 506.) It is signed by Stephens as principal, and does not show on its face that he contracted as agent.

BLISS, Judge, delivered the opinion of the court.

The defendants were auctioneers in Kansas City, and sold at auction a span of horses, wagon and harness, which were bid in by the plaintiff. The property turned out to have been stolen and was reclaimed. This suit was brought upon a warranty of title, the plaintiff claiming that defendants expressly warranted it to be good. The cause was submitted to the court upon conflicting testimony, and its finding must be sustained if founded upon correct declarations of law.

1. The second declaration is complained of, which was, in substance, that if defendants were in possession of the property and sold it for a valuable consideration, the law implies a warranty of title, although there was no express warranty. This would be correct if the defendants were the owners, or sold the property as owners; for the rule is that the seller of a chattel,

if in possession, who sells it as his own, warrants by implication that it is his own. (Pars. Cont., book 3, ch. 5.) But this can not be true in case of sale by auctioneers or other agents, if they sell as agents. Thus, a possession by a pawnbroker or auctioneer is not such a possession as implies title, but rather suggests title in others. (Pars. *supra*, and notes to 5th ed.) But though this declaration standing alone would indicate an erroneous view, yet another one, made at the instance of defendant, shows that the possession spoken of was understood to be possession as owner, and it was therefore correct.

2. The third declaration given at plaintiff's instance was, in substance, that if defendants did disclose to the plaintiff the name of their principal, but afterwards signed their own names to a written contract of sale which did not show that they acted as agents, the plaintiff should recover.

The contract or bill of sale referred to is as follows:

"KANSAS CITY, June 23, 1868.

"Received of J. W. Schell three ($300) hundred dollars for one bay and one gray horse and one two-horse wagon and harness. A. R. LEDFORD.

STEPHENS & SONS."

The mere fact that defendants were acting as auctioneers is not of itself notice that they were not selling their own goods, and they must be deemed to have been vendors, and responsible as such for title, unless they disclosed at the time the name of the principal. (Mills v. Hunt, 20 Wend. 431 ; Sto. Agency, §§ 27, 267.) This court, in Thompson v. McCullough, 31 Mo. 224, applied the principle to vendors of commercial paper. If the above receipt and bill of sale is to be treated as the contract between the parties, it is evident that the defendants undertook to sell the property as principals, and that the plaintiff purchased from them as well as Ledford, although the latter might have been the principal in fact; and parol evidence will not be admitted to contradict it and show that they did not sell as principals or intend to hold themselves responsible as such. It is said that the receipt may be explained. So it may, by showing that the $300 was not actually paid, or that more or less was paid, or even that there was no transaction of the kind. But when a sale by an agent is made, and the purchaser, who is deeply interested in the

title and is willing to trust the agent, while the principal is a stranger, takes written evidence of the sale, signed by the agents as principals, they must be held to have assumed the responsibility of principals; and none the less so because their business implies agency. Persons who hold themselves out as vendors of the property of others should see to the title of their principals. They have better opportunities of knowing it than purchasers ordinarily have, and though they may not be responsible for title if the property is purchased alone on the credit of the principal, yet it would be natural to rely upon the agent; and if he give a bill of sale in his own name, it must be presumed that the purchaser did so rely.

3. The plaintiff relied upon evidence of an express verbal warranty of title, and also upon the warranty implied by selling as principal, as evidenced by the above writing; and the defendant, treating it in either case as a collateral undertaking, asked for a declaration that such guaranty must be in writing because made to answer for the default of another person, and therefore contrary to the statute of frauds. But this would depend upon whether the promise was in fact to answer for another — i. e., to guarantee the promise of another — or was an original undertaking. If the auctioneer alone was trusted, and he expressly agreed for himself to warrant the title, then the promise is not collateral, and is good though not in writing. A factor or commission merchant who verbally agrees to guarantee the sales is held for the default of the principal, notwithstanding the statute. (Wolf v. Koppel, 5 Hill, 458; Sherwood v. Stone, 14 N. Y. 267; Browne on Frauds, § 213.) The reason given in Sherwood v. Stone, why a different rule prevails in England, is because there the undertaking is understood to be collateral — i. e., to pay if the debt cannot be collected of the purchaser — while in this country it is held to be an original undertaking.

I find no error in the record, and the judgment will be affirmed. The other judges concur.